**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Silvia Gomez Salazar, | No. CV-21-00743-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 15), the Commissioner's answering brief (Doc. 18), and Plaintiff's reply (Doc. 19), as well as the Administrative Record (Doc. 11, "AR"), and now reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

I.  Procedural History

On January 16, 2014, Plaintiff filed her first application for disability and disability insurance benefits, alleging disability beginning on March 1, 2012. (AR at 103.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On June 23, 2016, following a hearing, the ALJ issued an unfavorable decision. (*Id.* at 100-11.) The Appeals Council later denied review. (*Id.* at 129.)

On May 9, 2017, Plaintiff filed her second application for benefits, alleging

disability beginning on June 24, 2016. (AR at 16.)[1]  The SSA denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*)  On April 14, 2020, following a hearing, the ALJ issued an unfavorable decision. (*Id.* at 16-27.)  The Appeals Council again denied Plaintiff's request for review.  (*Id.* at 1-2.)

II.      The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.  *Id.*  At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If not, the claimant is disabled.  *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019).  The Court may set aside the Commissioner's disability determination only if it is not supported by substantial

---

[1]      Although Plaintiff's application listed an alleged onset date of October 1, 2015 (AR at 238), the previous ALJ concluded during Plaintiff's earlier proceeding that Plaintiff was not disabled through June 23, 2016 (AR at 103).  Accordingly, the ALJ in this proceeding—seemingly without objection by Plaintiff—treated the alleged onset date as June 24, 2016.  (AR at 16, 41.)

evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. The ALJ's Decision

The ALJ first determined that Plaintiff rebutted the presumption of continuing non-disability by demonstrating a changed circumstance since her last disability benefits application. (AR at 16.) Specifically, an MRI in November 2018 "show[ed] degenerative changes and grade 1 compression of the descending right L5 nerve root" and other medical records indicated new "complications from the [Plaintiff's] obesity and diabetes . . . predominantly resulting in radiating pain." (*Id.* at 16-17.)

Next, the ALJ found that Plaintiff had not engaged in substantial, gainful work activity since June 24, 2016 and that Plaintiff had the following severe impairments: "obesity, diabetes mellitus, peripheral neuropathy, degenerative disc disease, grade 1 compression of descending L5 nerve root, carpal tunnel syndrome, and osteoarthritis." (*Id.* at 19.)[2] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 21.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs, but only occasionally climb ladders, ropes, or scaffolds. She can tolerate a moderate noise intensity level. She can frequently handle, finger, and feel. She can have occasional exposure to extreme cold, extreme heat, moving mechanical parts, and

---

[2] The ALJ also evaluated "hypertension, varicose veins, vitamin D deficiency, gastroesophageal reflux disease ('GERD'), and dyslipidemia" but concluded that "these impairments do not cause, either singly or in combination, more than a minimal limitation in the claimant's ability to perform basic work activities for 12 consecutive months." (AR at 19.) The ALJ made similar determinations regarding Plaintiff's "depression and anxiety." (*Id.* at 19-21.)

unprotected heights.

(*Id.* at 22.) As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent with the totality of the evidence." (*Id.* at 22-23.) The ALJ also evaluated opinion evidence from Plaintiff's treating physician Dr. Ahmad Qasimyar, concluding his opinions were unpersuasive. (*Id.* at 24.) The ALJ also considered (1) Plaintiff's physical therapy records, (2) various treatment notes, (3) "Prior Administrative Medical Findings by the State agency consultants," and (4) Plaintiff's own statements. (*Id.* at 23-24.)

Finally, based on the testimony of a vocational expert, the ALJ concluded that although Plaintiff was incapable of performing her past relevant work as a fast-food worker, she was capable of performing other jobs that exist in significant numbers in the national economy, including dining room attendant, housekeeping, and cashier II. (*Id.* at 24-26.) Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 26.)

IV. Discussion

Plaintiff presents two issues on appeal: (1) whether the ALJ erred in finding that her conditions did not equal a listed impairment under Impairment Listing 1.04(A); and (2) whether the ALJ's RFC determination was supported by substantial evidence where "the ALJ rejected every opinion in the record, including that of treating physician, Ahmad Z. Qasimyar, M.D." (Doc. 15 at 1.) As a remedy, Plaintiff seeks a remand for further proceedings and requests "a *de novo* hearing and new decision." (*Id.* at 25.)

A. **Listed Impairment**

1. Standard Of Review

At step three of the sequential evaluation, a claimant can establish disability if she shows that her impairment meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*,

738 F.3d 1172, 1176 (9th Cir. 2013) (citation omitted). The mere diagnosis of a listed impairment "is not sufficient to sustain a finding of disability." *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990). Instead, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted). It is the claimant's burden to prove her impairment meets the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526).

2. The ALJ's Evaluation Of Impairment Listings

The listing at issue here, Listing 1.04, is entitled "Disorders of the spine." It provides as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful

>    dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04(A). *See also Schieno v. Colvin*, 2016 WL 1664909, *4-5 (N.D.N.Y. 2016). Although, as noted, Listing 1.04 may be satisfied in three different ways, Plaintiff clarifies in her brief that she is only proceeding under the first option set forth in Listing 1.04(A). (Doc. 15 at 11; Doc. 19 at 1-2.)

The ALJ stated that Plaintiff's impairments "did not meet or equal section . . . 1.04 (Disorders of the spine) . . . because the claimant is able to ambulate effectively, as defined in section 1.00(B)(2)(c). Additionally, there is no evidence that the claimant is unable to perform fine and gross movements effectively, as defined in section 1.00 (B)(2)(c). There is also no operative or pathology report of tissue biopsy, or appropriate medically acceptable image showing spinal arachnoiditis." (AR at 21.)

### 3. The Parties' Arguments

Plaintiff argues that the ALJ's step-three analysis was insufficient because "[t]he ALJ recited the various requirements of Listing 1.04A, but made no analysis, or even general statements, regarding Plaintiff meeting said listing." (Doc. 15 at 10.) Plaintiff also points to the November 2018 MRI of her lumbar spine that noted spinal abnormalities from L3 to L5 and an October 2018 physical therapy appointment that noted a "decreased range of motion" and "hypoethesia in L4, L5." (Doc. 15 at 11-12, citing AR at 474, 630.)

The Commissioner defends the sufficiency of the ALJ's step-three analysis regarding Listing 1.04(A), arguing that "the ALJ thoroughly evaluated and discussed the evidence relating to Plaintiff's spinal impairment." (Doc. 18 at 5.) The Commissioner's rationale is as follows:

> The ALJ noted that the diagnostic evidence corroborated Plaintiff's claim of

severe musculoskeletal disorders, and that an October 2018 lumbar spine MRI confirmed degenerative changes and grade 1 compression of the descending right L5 nerve root. However, the ALJ identified evidence negating the [Listing 1.04(A)'s requirements]. The ALJ identified a November 2018 examination, performed shortly after Plaintiff's MRI, that revealed normal gait, normal motor and sensory function, and intact reflexes and coordination. The ALJ also generally noted that objective findings revealed normal spinal range of motion and normal gait. The examinations the ALJ identified also indicated normal strength and tone, normal sensory examination, normal reflexes, no swelling, no muscle weakness, and no focal deficits, and multiple instances where Plaintiff denied back, joint, and muscle pain. This included a July 2017 consultative examination during which Plaintiff was able to ambulate unassisted and without difficulty, and did not use any assistive devices. During that examination, Plaintiff was neurologically intact, and she had full active and passive range of motion of the bilateral lower extremity, full strength, normal muscle bulk without atrophy, and normal sensation. The consultative examiner also performed a detailed lower back examination, which was unremarkable, save for Plaintiff's complaints of reduced sensation and paresthesia in the bilateral toes. Otherwise, she had full range of motion, normal muscle bulk without atrophy, normal strength, and normal sensation. Additionally, the ALJ found it notable that Plaintiff reported that she was able to walk for one and half miles without resulting symptoms, that she walked two miles into the Grand Canyon, and her cardiologist noted that this showed "excellent exercise tolerance."

What is more, a consultative examiner and a State agency medical consultant both found that Plaintiff did not have any severe impairments, much less that she would meet or equal a listed impairment. Also, a State agency medical consultant at the reconsideration level found that Plaintiff could perform medium work. The ALJ is responsible for weighing the evidence and making findings, and here the ALJ properly found that the evidence did not support a finding that Plaintiff met or equaled listing 1.04A.

In sum, based on the ALJ's comprehensive review of the medical evidence regarding Plaintiff's spinal impairment, including the many negative physical and neurological findings of record, the ALJ fully considered listing 1.04 and did not err in finding that Plaintiff failed to meet or equal any listed impairment. Plaintiff identifies a few instances in the record where she had decreased range of motion, positive straight leg raises, and hypoesthesia. However, she does not contest that she is unable to meet the other requirements of Listing 1.04A, such as motor loss (atrophy associated with muscle weakness) accompanied by sensory or reflex loss, and positive straight-leg raising test, both *sitting and supine*.

(*Id.* at 5-7, citations omitted.)

In reply, Plaintiff argues that the Commissioner has implicitly conceded that "the ALJ did not clearly state why Plaintiff's impairment failed to satisfy the Listing 1.04A" and contends that the Commissioner's summary of the medical evidence discussed elsewhere in the ALJ's decision is insufficient to cure this omission because "[t]hough the court may conclude that the ALJ did reference various findings, it cannot be said that he explained how these findings comported or failed to comport with the listing—this is error." (Doc. 19 at 1-2.)

### 4. Analysis

The Court agrees with Plaintiff that the ALJ committed harmful error when analyzing Listing 1.04(A) during step three of the sequential analysis. The problem is that Listing 1.04 sets forth three different ways in which the "disorders of the spine" listing can be satisfied. Each has different requirements and elements. *See generally Alban v. Astrue*, 2012 WL 6728055, *3 (D. Conn. 2012) ("Listing 1.04 relates to disorders of the spine, and there are three subsections of Listing 1.04:(A), (B), and (C), only one of which needs to be satisfied for a claimant to meet the Listing requirement."). The subdivision at issue here, in Listing 1.04(A), requires (1) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain"; (2) "limitation of motion of the spine"; (3) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss"; and (4) "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." In contrast, Listing 1.04(B) focuses on other considerations, such as the presence or absence of "[s]pinal arachnoiditis," and Listing 1.04(C) focuses on still other considerations, such as "chronic nonradicular pain and weakness" and the "inability to ambulate effectively."

Here, the ALJ identified three specific reasons why Listing 1.04 was not satisfied: (1) "the claimant is able to ambulate effectively"; (2) "there is no evidence that the claimant is unable to perform fine and gross movements effectively"; and (3) "[t]here is also no operative or pathology report of tissue biopsy, or appropriate medically acceptable image

showing spinal arachnoiditis." (AR at 21.) Although these are relevant considerations when determining whether Listings 1.04(B) and 1.04(C) are satisfied, they do not address the specific requirements under Listing 1.04(A). Other courts have reversed under similar circumstances. *See, e.g.*, *Brandi H. v. Kijakazi*, 2022 WL 3028004, \*4 (D. Conn. 2022) ("There is little question that the ALJ's finding that Plaintiff could ambulate effectively was a significant factor in the Listing determination. And Plaintiff is correct that effective ambulation is not a necessary showing in order to meet Listing 1.04(A). Further, the Court's assessment is made more difficult by the ALJ's failure to specify or address the various and distinct criteria under which the listing determination was made. Indeed, as relevant to Listings 1.04(A), the ALJ offered a single sentence: 'Otherwise, there is *no evidence* satisfying the listing criteria for nerve root compression.' But this statement is so obviously incorrect and inconsistent with the findings made with respect to Plaintiff's RFC, that a remand for further consideration on this issue is necessary.") (citations omitted); *Monsoori v. Comm'r of Soc. Sec.*, 2019 WL 2361486, \*4 (W.D.N.Y 2019) ("[T]he ALJ failed to provide any specific rationale showing that the medical evidence of record does not meeting Listing 1.04(A). Moreover, it is impossible to know whether the ALJ specifically considered Listing 1.04(A), given the ALJ referenced only the general Listing of 1.00, which encompasses all musculoskeletal systems."); *Alban*, 2012 WL 6728055 at \*4 n.10 ("[D]efendant's contention that plaintiff's impairment does not meet Listing 1.04 because she cannot establish an 'inability to ambulate effectively[,]' is thoroughly misplaced as plaintiff need only establish that her impairment meets Listing 1.04(A), (B), or (C), and the inability to ambulate effectively is a condition of Listing 1.04(C).").

The Court acknowledges that the Commissioner has identified reasons why the ALJ's evaluation of the evidence in relation to other issues could be construed as consistent with a determination that the requirements of Listing 1.04(A) were not satisfied. However, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*

*v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009). Additionally, the ALJ's own analysis suggests that the ALJ may have focused only on the factors that are unique to Listing 1.04(B) ("spinal arachnoiditis") and Listing 1.04(C) ("able to ambulate effectively") and did not give any independent consideration to the factors that are unique to Listing 1.04(A). Remand is warranted in this circumstance. *Cf. Fulfer v. Astrue*, 917 F. Supp. 2d 883, 886-87 (E.D. Wisc. 2013) ("[T]he ALJ discussed 'neurological abnormalities' as not being present, when it is not entirely clear that those 'neurological abnormalities' are required to satisfy Listing 1.04(C). In other words, the ALJ's determination that Mr. Fulfer did not satisfy Listing 1.04(C) was far too general. . . . This is the very problem with decisions like the one issued by the ALJ here: without at least some analysis of the application of the Listing, the Court cannot determine that the ALJ did, in fact, consider the medical evidence and give Mr. Fulfer a fair shot at satisfying the Listing. Thus, the ALJ's error was not harmless. Perhaps the ALJ engaged in an adequate analysis of the evidence, but without a more specific record in his opinion the Court cannot be sure.").

      B.      **Evaluation Of Dr. Qasimyar's Opinions And RFC Determination**

           1.      <u>Standard Of Review</u>

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency. . . .

20 C.F.R. § 416.920c(a).[3] As to the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up). Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors. . . ." *Id.*

…

---

[3] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c(c).

### 2. Dr. Qasimyar's Opinions

Dr. Qasimyar, Plaintiff's treating physician, examined Plaintiff on October 22, 2019. (AR at 963-64.) During the examination, Dr. Qasimyar diagnosed Plaintiff with chronic lower back pain, diabetes, depression, and cervical impairments. (*Id.*) Dr. Qasimyar opined that Plaintiff's symptoms would "constantly" interfere with her attention and concentration, impeding her ability to perform simple work-related tasks. (*Id.*) As for her physical limitations, Dr. Qasimyar opined that Plaintiff is able to walk three city blocks without rest or significant pain, sit for three hours at a time, stand for two hours per day, lift less than 10 pounds frequently, and lift 10 pounds occasionally; has no limitations in doing repetitive reaching, handling, or fingering (but has a 60% capacity in reaching, 70% capacity in grasping, twisting, and turning objects, and an 80% capacity for fine manipulation); and would need a 20-minute break every three hours. (*Id.*) Finally, Dr. Qasimyar opined that Plaintiff would be absent from work more than four times per month. (*Id.*)

### 3. The ALJ's Evaluation Of Dr. Qasimyar's Opinions

The ALJ found Dr. Qasimyar's opinions unpersuasive. (AR at 24.) The ALJ's full rationale was as follows:

> Dr. Ahmad opined that the claimant can walk 3 blocks without rest. She can sit for 3 hours a day and can stand and walk for 2 hours a day. She would need extra breaks. She can only lift and carry 10 pounds occasionally and less than 10 pounds frequently. She has between a 30-40% limitations in handling, fingering, and feeling. She would be absent from work 4 days a month. Although Dr. Ahmad supported his opinion with examinations, his opinion is inconsistent with his own treatment notes, where the claimant is noted to be negative for back and joint pain on occasion. He has failed to recommend any other treatment than physical therapy and this conservative measure which improved the claimant's symptoms. Such a conservative treatment modality is inconsistent with the level of limitation Dr. Ahmed says afflicts the claimant. Dr. Ahmad's opinion is also inconsistent with other objective evidence and the claimant's own statements. Physical examinations are within normal limits. She is noted to walk with a normal gait and to have normal range of motion. She denied back on multiple occasions and, again, her only treatment has been participation in physical therapy. She reported regularly walking around her neighborhood, up to 1.5 miles, and she reported hiking 2 miles down into the Grand Canyon, which demonstrates an excellent exercise tolerance. Accordingly, the undersigned finds Dr. Ahmad's opinion to be unpersuasive.

(*Id.*, internal citations omitted.)

### 4. The Parties' Arguments

Plaintiff's final assignment of error falls under the following heading: "The ALJ's RFC determination is not supported by substantial evidence and is the product of legal error where the ALJ rejected every opinion in the record, including that of treating physician, Ahmad Z. Qasimyar M.D., and crafted an RFC out of whole cloth." (Doc. 15 at 13-25.) The Court construes this challenge as raising the following three arguments: (1) the ALJ improperly discounted Dr. Qasimyar's opinion by giving undue weight to treatment notes from appointments that were unrelated to back pain (*see, e.g.*, Doc. 15 at 20 ["The ALJ's citation to treatment notes regarding Plaintiff's diabetes, hyperlipidemia, urinary incontinence, and pink eye is bordering on absurd."]); (2) the ALJ discounted the significance of Plaintiff's need for continued therapy; and (3) the ALJ cherry picked the record to find instances that support an RFC of light work, such that the overall explanation is "not legitimate" and "deprives the court from meaningful review." (*Id.* at 13-25.)

The Commissioner defends the sufficiency of the ALJ's rationale by walking through the evidence the ALJ cited. (Doc. 18 at 9-13.) For example, the Commissioner contends that the fact that Plaintiff presented with a normal gait on several occasions undermines "Dr. [Qasimyar's] extreme sitting, standing, and walking restrictions." (*Id.* at 10, citing AR at 446, 623, 662, 682, 992.) The Commissioner notes that at other times, like in May 2018, Plaintiff displayed a normal range of motion, and in December 2018, Plaintiff displayed a normal gait  (Doc 18 at 10, citing AR at 623, 1287.)  The Commissioner also notes that Plaintiff denied back pain on several occasions. (Doc. 18 at 10-11, citing AR at 444, 499-500, 621, 657, 660, 1109.) The Commissioner also points to Plaintiff's conservative treatment (physical therapy) and Plaintiff's statements that "she regularly walked one and half miles around her neighborhood," as well as a treatment note stating she had "excellent exercise tolerance," to undermine Dr. Qasimyar's opinion that she can only walk "two to three blocks." (Doc. 18 at 11, citing AR at 387, 391, 395, 740, 837.) As for Plaintiff's contention regarding purportedly unrelated treatment notes, the

Commissioner argues that "Plaintiff has alleged an extremely limited ability to function because of her low back pain. Were her symptoms actually that severe, it is certainly reasonable to expect them to manifest during a physical examination, no matter the context." (Doc. 18 at 12.) Overall, the Commissioner contends that the "record was not replete with evidence that Plaintiff's range of motion and strength were substantially impaired—indeed it was the other way around. That is, the record was replete with documentations that Plaintiff's range of motion and strength were *normal*." (*Id.*)

In reply, Plaintiff reiterates her arguments, concluding that "the ALJ's 'inferences' are based upon a rejection of disabling opinion evidence based upon treatment that was entirely unrelated to Plaintiff's back pain and spinal impairment" and the "ALJ has built no bridge between the evidence he relied upon and his rejection of the various, disabling opinions contained in the record." (Doc. 19 at 3.)

### 5. Analysis

The Court finds no harmful error in the ALJ's evaluation of Dr. Qasimyar's opinions. The ALJ considered the consistency and supportability factors, as required by the new SSA regulations, and Plaintiff only challenges whether the ALJ's findings as to those factors were supported by substantial evidence.

They were. As for the consistency factor, the ALJ correctly noted that Plaintiff did not raise any allegations of back pain during examinations performed by other medical providers. (*See, e.g.*, AR at 621 [reporting no back pain during pink-eye exam: "Negative for . . . back pain"]; *id.* at 477 [reporting no back pain during hernia examination: "Not present – Joint pain and Muscle Weakness"].) Although it is true that these examinations were performed by providers who did not specialize in back care, Plaintiff does not cite any case or regulation suggesting that such providers are incapable of observing and documenting a patient's physical symptoms. Indeed, the duty of the ALJ is to consider the record as a whole. 20 C.F.R. § 404.1545(a)(3). At any rate, it was rational for the ALJ to rely upon those observations when evaluating the consistency factor. *Smith v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2071285, *9 (D. Ariz. 2023) (same). And "[i]f the evidence is

'susceptible to more than one rational interpretation,' we are required to affirm." *Attmore*, 827 F.3d at 875.

As for the supportability factor, the ALJ permissibly found a conflict between Dr. Qasimyar's diagnosis of disabling limitations and the fact that Dr. Qasimyar had failed to recommend any other treatment than physical therapy. As the Ninth Circuit has noted in other contexts, physical therapy is generally considered a conservative treatment method. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain.").

Given these determinations, there is no need to evaluate whether the ALJ's other proffered reasons for discrediting Dr. Qasimyar's opinions were also supported by substantial evidence. Any error would have been harmless in light of the ALJ's articulation of other permissible reasons, supported by substantial evidence, for discrediting those opinions. *See, e.g.*, *Reed v. Saul*, 834 F. App'x 326, 329 (9th Cir. 2020) ("To the extent the ALJ erred in discounting the opinions of Dr. Cochran because her opinions were based in part on Reed's self-reports of his symptoms, that error is harmless because the ALJ offered multiple other specific and legitimate reasons for discounting Dr. Cochran's opinions."); *Baker v. Berryhill*, 720 F. App'x 352, 355 (9th Cir. 2017) ("Two of the reasons the ALJ provided for discounting examining psychologist Dr. Wheeler's opinion were not legally valid . . . [but] the ALJ provided other specific and legitimate reasons for discounting Dr. Wheeler's opinion. . . . As a result, any error was harmless."); *Presley-Carrillo v. Berryhill*, 692 F. App'x 941, 944-45 (9th Cir. 2017) ("The ALJ also criticized Dr. Van Eerd's opinion in part because Dr. Van Eerd did not define the terms 'mild,' 'moderate,' or 'severe' in his assessment. This criticism was improper . . . [but] this error was harmless because the ALJ gave a reason supported by the record for not giving much weight to Dr. Van Eerd's opinion—specifically, that it conflicted with more recent

treatment notes from Dr. Mateus.").

Finally, there is no merit to Plaintiff's final, catch-all assignment of error, which is that the ALJ failed to provide a legally sufficient explanation for the RFC determination. Plaintiff has not identified any harmful error in the ALJ's evaluation of her symptom testimony or in the ALJ's evaluation of any of the opinion evidence. Nor did the ALJ create the RFC "out of whole cloth"—the ALJ's decision contains a detailed discussion of the evidence in the record and an explanation of the flaws that the ALJ found in each category of evidence.

At any rate, because the Court is remanding due to the error in the step-three analysis, Plaintiff will have an opportunity on remand to seek further clarification concerning the perceived errors in the ALJ's RFC formulation.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **reversed** and this case is **remanded** for further proceedings. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 6th day of March, 2023.

Dominic W. Lanza
United States District Judge

- 16 -